UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | No. 10 CR 821 |
| v. | ) | Judge Blanche M. Manning |
| | ) | |
| JOHN SULLIVAN, et al., | ) | |
|     Defendant. | ) | |

## MEMORANDUM AND ORDER

Defendants John Sullivan, his brother Dan Sullivan, and Patrick Rooney are charged with operating a scheme in which they convinced elderly homeowners to refinance their homes in order to hire the defendants' home repair business for work the defendants never intended to perform.

The two Sullivan defendants and the government have filed numerous motions in limine in advance of trial. Evidence should be excluded on a motion in limine "only when evidence is clearly inadmissible on all potential grounds . . . [and][u]nless evidence meets this high standard, evidentiary rulings should be deferred until trial." *See Steck v. Bimba Mfg Co.*, No. 96 CV 7442, 1997 WL 685003, at *1 (N.D. Ill. Oct. 30, 1997). The denial of a motion in limine does not mean that the evidence is necessarily admissible, rather, it means only that the party moving in limine has not demonstrated that there is no possible basis for the admission of the evidence. *See Holmes v. Sood*, No. 02 CV 7266, 2006 WL 1988716, at *1 (N.D. Ill. July 12, 2006). The denial of a motion in limine does not preclude a party from objecting to the admission of any evidence at trial. *See United States v. Connelly*, 874 F.2d 412, 416 (7th Cir.1989) ("a ruling [on motion in limine is] subject to change based upon the court's exposure to the evidence at trial").

Keeping in mind these observations, the court addresses the parties' motions in limine in turn.

**DEFENDANT JOHN SULLIVAN'S MOTIONS**

    **1.**    **Motion to Bar Evidence of Defendant's Alleged Flight [101-1]**

J. Sullivan seeks to bar evidence that he fled authorities. The government does not intend to present such evidence unless first raised by the defendant, so the motion is granted.

    **2.**    **Motion to Bar Evidence of Defendant's Alleged Drug Use [102-1]**

J. Sullivan seeks to bar evidence of his alleged drug use. The government does not intend to present evidence that J. Sullivan used drugs himself. However, it does anticipate presenting evidence that J. Sullivan compensated a former employee involved in the alleged

scheme with cocaine. J. Sullivan's alleged payments in cocaine are relevant to the charged conduct and therefore such evidence is not excluded. However, the motion to exclude evidence of J. Sullivan's own alleged use of illegal substances is granted.

3. **Motion to Bar Evidence of Money Found in Ex-Wife's Home [103-1]**

J. Sullivan seeks to bar evidence of money found in a safe in his ex-wife's home. The government does not object to the motion and, therefore, the motion is granted.

4. **Motion to Bar Evidence of Alleged Thefts from Customers' Homes [104-1]**

Next, J. Sullivan seeks to bar evidence of thefts of items from the homes of his customers. J. Sullivan contends that such evidence is irrelevant because he did not "direct, participate in, authorize, or ratify" any of the thefts. Motion [104-1] at 1. However, the indictment alleges that J. Sullivan schemed with his codefendants and, as part of the scheme, if "a customer requested a copy of the contract, defendants JOHN SULLIVAN, DANIEL SULLIVAN and PATRICK ROONEY, and others acting with them and at their direction, later returned to the house and attempted to steal the customer's copy of the contract." Superseding Indictment [45–1] ¶ 12. The thefts are therefore evidence of the charged scheme and, for that reason, the motion to bar evidence of the thefts is denied.

5. **Motion to Bar Evidence of Breach of Contract Lawsuit [105-1]**

J. Sullivan seeks to bar evidence of a breach of contract lawsuit filed against him in 2010 in the Circuit Court of Cook County. The government does not object to the motion and, therefore, it is granted.

6. **Motion to Bar Evidence of Defendant's Prior Conviction [106-1]**

J. Sullivan seeks to bar evidence of his prior state court conviction for theft/deception. J. Sullivan contends that evidence of his prior conviction will unduly prejudicial under Federal Rule of Evidence 609(a)(1) because jurors may conclude that if J. Sullivan was guilty of the prior offense, he must also be guilty of the instant offense.

Under Rule 609(a)(1), evidence of prior crimes may be used to impeach a witness at trial, unless the witness is a criminal defendant and the court determines that the probative value of the impeaching evidence is outweighed by its prejudicial effect. One of the conditions the state court imposed as part of J. Sullivan's sentence for his state court conviction was prohibiting him from engaging "'in home repair, home rebuilding, remodeling of any kind, nor any construction contracting of any kind.'" Response [139-1] at 10 (quoting state court conviction). Therefore, the conviction is highly probative of his knowledge and intent to engage in the instant offense of fraud involving home repairs. Because the evidence is highly probative, it outweighs the risk of any prejudicial effect of the conviction.

Accordingly, the motion to exclude is denied.

### 7. Motion to Bar Evidence of Injunction against Defendant [107-1]

Next, J. Sullivan seeks to bar evidence of a permanent injunction entered in 2004 that imposed a lifetime ban on the defendant's involvement in the home repair industry in Chicago, whether paid or unpaid. The injunction was the result of a lawsuit filed against him by the City of Chicago alleging home repair fraud. In support of his motion to bar evidence of the injunction, J. Sullivan contends that the injunction is "entirely irrelevant" to the wire fraud allegations he faces in this case.

To convict J. Sullivan of wire fraud, the government must prove each of the following elements: (1) the defendant knowingly devised or participated in a scheme to defraud or obtain money or property by means of materially false pretenses, representations, promises, or omissions; (2) the defendant did so knowingly and with the intent to defraud; and (3) the defendant employed an interstate telephone call or electronic communication in furtherance of the scheme. *United States v. Fenzi*, No. 09 CR 376, 2011 WL 2020825, at *3 (N.D. Ill. May 24, 2011). According to the superseding indictment, J. Sullivan participated in a scheme that targeted elderly Chicago residents by convincing them they needed home repairs the defendants never intended to perform, and to pay for the repairs by refinancing their homes and wiring the proceeds into the defendants' bank account. The scheme also allegedly involved mailing flyers to potential Chicago customers advertising the company that J. Sullivan controlled as being licensed, bonded and insured when, in fact, J. Sullivan was enjoined from being involved in home repairs. Evidence of the injunction is therefore relevant to whether J. Sullivan made materially false representations, and whether he did so knowingly and with intent.

Accordingly, the motion to bar evidence of the injunction is denied.

### 8. Motion to Bar Evidence of Third Party Financial Transactions [108-1]

In this motion, J. Sullivan seeks to bar evidence of financial transactions undertaken by third parties. Specifically, he seeks to exclude any evidence that customers of his home repair business refinanced their homes, allegedly in order pay for the repairs. J. Sullivan contends that such evidence is irrelevant because the refinancing transactions were handled not by himself, but by third parties.

The superseding indictment alleges that, as part of the charged scheme, the defendants convinced homeowners to hire their company to perform expensive repairs and "to refinance their homes to pay for those repairs." Superseding Indictment [45-1] ¶ 3. Therefore, the relevance of the refinancing transactions turns not on the personal involvement of J. Sullivan, but rather the allegation that they were part of the scheme in which he allegedly participated.

Accordingly, the motion to bar evidence that customers refinanced their homes is denied.

9. **Motion to Bar Evidence of Settled Lawsuits [109-1]**
10. **Motion to Bar Evidence of Complaints About Defendant's Home Repair Work [112-1]**

In these motions, J. Sullivan seeks to bar evidence of lawsuits filed in state court and complaints made to the Illinois Attorney General's office, the Better Business Bureau, and similar entities, about repair work that he allegedly performed or failed to perform. J. Sullivan contends that these lawsuits and complaints are inadmissible hearsay under Federal Rules of Evidence 801 and 802, irrelevant under Rule 402, and unduly prejudicial under Rule 403. He also contends that evidence that any of the lawsuits were settled is also inadmissible to prove liability under Federal Rule of Evidence 408.

In response, the government contends that it seeks to introduce evidence of the lawsuits and complaints not to prove liability but, rather, to show intent and knowledge. For instance, the government expects to present evidence that after one victim filed suit, the defendants went to the victim's home posing as attorneys and got the victim to sign a statement that she "did not know Dan Sullivan, John Sullivan or any other Sullivan," and that the Sullivans had not tricked her into refinancing her home. In response to another lawsuit, the government expects to introduce evidence that the Sullivans directed one of their employees to go to a victim's home posing as a city inspector, and to attempt to stall the victim and his lawsuit in hopes the victim would lose his memory or die.

Thus, the proposed evidence is relevant to J. Sullivan's knowledge and intent to defraud, and is further evidence of J. Sullivan's alleged scheme. Although J. Sullivan cursorily argues that the evidence should also be excluded because it would be unduly prejudicial, that argument is undeveloped and therefore forfeited. *See White Eagle Cooperative Ass'n v. Conner*, 553 F.3d 467, 476 n. 6 (7th Cir. 2009) (undeveloped arguments unsupported by citations to authority are forfeited).

Accordingly, the motions to exclude evidence of the lawsuits and complaints are denied. However, the court will consider giving a limiting instruction to jurors regarding the evidence of other lawsuits and complaints. If the defendant seeks to have a limiting instruction given, the parties shall confer in order to present the court with an agreed-upon instruction.

### 11. Motion to Bar Evidence of Alleged Use of Racial Epithets [110-1]

J. Sullivan seeks to bar evidence of his alleged use of a specific racial epithet, often referred to as the "n" word. The government responds that it does not intend to elicit such evidence and, therefore, the motion is granted.

### 12. Motion to Bar Testimony of Jeffrey Kleinberg [118-1]

In this motion, J. Sullivan seeks to bar the government from presenting any trial testimony from Jeffrey Kleinberg. The government responds that it does not intend to call Kleinberg as a witness in its case-in-chief. Accordingly, the defendant's motion is granted, though the court will revisit the issue should the government seek to question Kleinberg for purposes of rebuttal or impeachment.

### 13. Motion to Bar Testimony of James Browning [119-1]

Next, J. Sullivan seeks to bar the government from presenting any trial testimony from James Browning. J. Sullivan anticipates that the government will question Browning about blank contracts he allegedly obtained at the direction of codefendant Dan Sullivan so that contracts signed by customers could later be manipulated. J. Sullivan argues that such evidence would be irrelevant as to him because Browning dealt only with Dan Sullivan.

To convict J. Sullivan of wire fraud under 18 U.S.C. § 1343, it must prove he participated in a scheme to defraud. A scheme to defraud includes not only those acts in which the defendant personally took part, but also acts taken by others in furtherance of the scheme, even acts of which J. Sullivan was unaware. *See United States v. Adeniji*, 221 F.3d 1020, 1026 (7th Cir. 2000) ("Allismith need not even have been aware of Adediran's identity or his specific acts in furtherance of the fraudulent scheme, so long as the evidence adequately establishes Allismith's own knowing participation in the same scheme.").

Because the anticipated testimony by Browning involves details of the scheme in which J. Sullivan alleged participated, the motion to bar Browning's testimony on the grounds of relevance is denied.

### 14. Motion to Bar Testimony of Stephanie Lacy [120-1]

J. Sullivan seeks to bar the government from presenting testimony from Stephanie Lacy at trial. J. Sullivan contends that any testimony from Lacy would be entirely irrelevant because she "had nothing whatsoever to do with any of the transactions at issue in this case." Motion [120-1] at 1. However, the government expects her to testify that she worked as a telemarketer for the defendants and targeted homeowners on the south and west sides of Chicago to solicit home repair work. The government also expects her to testify that J. Sullivan was her boss, that he ran the day-to-day operations of the home repair company, and that her telemarketing script directed her to offer refinancing to customers.

J. Sullivan also seeks to bar as irrelevant any reference to Lacy as being a drug addict. However, J. Sullivan's alleged scheme involved targeting recovering drug addicts to be employees of the home repair business because he believed them to be easier to manipulate. Therefore, evidence that Lacy was living at a drug rehabilitation center when she was offered a job at the home repair business is relevant to the scheme in which J. Sullivan is accused of participating.

J. Sullivan also cursorily states that evidence of Lacy's addiction would be unduly prejudicial to him and should be excluded under Federal Rule of Evidence 403. But he develops no argument to explain how such evidence would unduly prejudice him and, therefore, the argument is forfeited. *See White Eagle Cooperative Ass'n v. Conner*, 553 F.3d 467, 476 n. 6 (7th Cir. 2009) (undeveloped arguments unsupported by citations to authority are forfeited).

The testimony anticipated from Lacy would be relevant to the allegations of wrongdoing that J. Sullivan faces and, therefore, the motion to bar her testimony is denied.

**15.     Motion to Bar Testimony of Joyce Love [121-1]**

Next, J. Sullivan seeks to bar the government from presenting testimony from Joyce Love that the defendants' home repair company targeted the elderly, females, and African-Americans. J. Sullivan argues that Love's testimony would be "speculative musings." However, Love is entitled to testify about her first-hand experiences working as a telemarketer for the home repair company. If her calls were directed at the elderly, females, and African-Americans, then such evidence appears to be relevant to the scheme in which J. Sullivan is accused of participating. Accordingly, the portion of the motion in which J. Sullivan seeks to bar Love from testifying that her telemarketing calls were directed at the elderly, females, and African-Americans is denied. However, such testimony must be based on Love's own experiences working for the home repair company as opposed to speculation about what she believed the alleged scheme involved.

J. Sullivan also seeks to bar the government from presenting testimony from Love about statements a city inspector made to her about the quality of work performed by the home repair company. The government responds that it does not intend to elicit such evidence and, therefore, that portion of the motion in limine is granted.

**16.     Motion to Bar Testimony of Floyd Nunn [122-1]**

In this motion, J. Sullivan seeks to bar testimony at trial from Floyd Nunn. In support, J. Sullivan contends that Nunn is of failing memory and cannot accurately recall events. The government responds that it does not intend to call Nunn as a witness. Accordingly, the motion is granted.

**17.     Motion to Bar Testimony of Martin Kelliher, or for Competency Hearing, or for Medical Records [123-1]**

Page 6

J. Sullivan seeks to bar testimony from Martin Kelliher that he "apparently is now, and was at all times during the events at issue, a cocaine addict and possibly an addict with respect to other substances." Motion [123-1] at 1. J. Sullivan contends that Kelliher's alleged addiction renders him "incompetent," and that prior to trial counsel should be allowed to question Kelliher "about the full nature of his illegal substance activities and addictions" *Id.* However, the Seventh Circuit has explicitly held that prior drug use is not probative of veracity. *See United States v. Neely*, 980 F.2d 1074, 1081 (7th Cir. 1992) (evidence of prior drug use is not admissible to impeach a witness' credibility generally, but rather is admissible only to show specific instances of memory loss such as blackouts). Therefore, Kelliher's alleged prior drug use does not render him incompetent to testify, but evidence that his drug use impaired his memory on specific occasions may be admissible. However, before attempting to use such evidence, the parties must make an offer of proof outside the presence of the jury.

Alternatively, J. Sullivan asks the court to order Kelliher to execute all documents necessary to facilitate the prompt release of all records of his mental health and addiction treatments so that he may effectively exercise his rights under the Confrontation Clause of the Sixth Amendment. "[T]he right to confrontation is a *trial* right" that is "satisfied if defense counsel receives wide latitude at trial to question witnesses." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). Thus, the Confrontation Clause does not entitle the defendant to the pretrial disclosure of a witness' medical records. *United States v. LaVallee*, 439 F.3d 670, 692 (10th Cir. 2006).

For the reasons stated, the motion to bar the testimony of Kelliher is denied.

### 18. Motion to Compel Government to Release Contact Information for its Witnesses or to Bar the Government from Presenting Any Witnesses [127-1]

In this motion, J. Sullivan seeks to compel the government to provide contact information for its witnesses or, in the alternative, to bar the government from presenting any witnesses at trial as a sanction for redacting the addresses and phone numbers on witness statements. J. Sullivan previously filed a motion to compel the government to produce contact information for the witnesses, but the court denied the motion because the government is under no obligation to provide a witness list before trial. *United States v. Bouye*, 688 F.2d 471, 473–74 (7th Cir. 1982) (defendant in a noncapital case is not entitled to a list of government witnesses). J. Sullivan now argues that some of the witness statements are potentially exculpatory because while the witnesses are allegedly victims of the defendants' home repair scheme, some were satisfied with the work the defendants performed. Therefore, J. Sullivan contends, under *Brady v. Maryland*, 373 U.S. 83 (1963), he is entitled to witness statements with the addresses and phone numbers unredacted.

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Evidence is material to guilt if its suppression would "undermine the confidence in the trial." *United States v. Bagley*,

473 U.S. 667, 678 (1985). *See also Kyles v. Whitley*, 514 U.S. 419, 434 (1995) ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.").

Although statements from some witnesses that they were satisfied with the defendants' work may cast J. Sullivan in a favorable light, the statements are not exculpatory because they are not material to his guilt or innocence. Specifically, the fact that on some occasions the defendants performed the work that customers paid for does not negate evidence that they defrauded other customers. *See United States v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir. 1990) ("Proof that a defendant acted lawfully on other occasions is not necessarily proof that he acted lawfully on the occasion alleged in the indictment.");

Accordingly, the motion for witnesses' contact information or, in the alternative, to bar the government from presenting any witnesses, is denied.

### 19. Motion to Bar Evidence of Fire on Neenah Street [128-1]

J. Sullivan seeks to bar evidence of a fire at a home on Neenah Street in Chicago. The government responds that it does not intend to introduce such evidence. Accordingly, the motion is granted.

### 20. Motion to Bar Statement "One Nail, No Jail" [129-1]

J. Sullivan seeks to bar evidence that he told a former employee "One Nail, No Jail." According to the government, former employee Martin Kelliher will testify that the statement meant that as long as the defendants performed some repair work on a home, they could not be prosecuted for fraud.

J. Sullivan argues that the statement should be excluded as a protected attorney-client communication because he was just relaying advice he received from counsel. However, J. Sullivan does not identify the attorney who gave him that advice, when it was given, who else was present when he received the advice, and to whom else he repeated the advice. As a result, he has failed to establish that the statement was a protected attorney-client communication. *See Stopka v. American Family Mut. Ins. Co., Inc.*, — F. Supp. 2d —, No. 10 CV 6034, 2011 WL 3839735, at *6 (N.D. Ill. Aug. 30, 2011) (under both federal and Illinois law, attorney-client privilege protects only communications made in confidence either seeking or giving legal advice).

Alternatively, J. Sullivan sets out a series of other reasons why the statement should be excluded, such as:

> 2. This "evidence" should be barred as without foundation.
> 3. This "evidence" should be barred as hearsay.

Page 8

    4.  Moreover, this "evidence" is irrelevant and should be
      barred under Rule 402 of the Federal Rules of Evidence.
    5.  Similarly, this "evidence should be barred under Rule 403
      of the Federal Rules of Evidence because any hypothetical
      relevance is substantially outweighed by the danger of
      unfair prejudice, confusion, and misleading of the jury.

Motion [129-1] at 2. This section of the defendant's brief merely identifies potential bases for excluding evidence under the Federal Rules of Evidence. The defendant has made no effort to explain the applicability of any of these potential bases to the statement at issue. The arguments are therefore forfeited because they are undeveloped and unsupported by citations to authority. *See White Eagle Cooperative Ass'n v. Conner*, 553 F.3d 467, 476 n. 6 (7th Cir. 2009) (undeveloped arguments unsupported by citations to authority are forfeited).

  Accordingly, the motion to bar evidence of the statement "One Nail, No Jail" is denied.

  **21. Motion to Exclude Testimony That Certain Zip Codes Are Predominantly African-American [130-1]**

  Next, J. Sullivan seeks to exclude testimony from agent Silvia Carrier or anyone else that certain zip codes in Chicago are predominantly African-American. J. Sullivan contends that such evidence is "without foundation" and that Carrier is not a qualified expert. However, without hearing the basis of the witness' knowledge, the court cannot conclude whether foundation exists or whether only an expert can opine on the racial makeup of Chicago's neighborhoods.

  J. Sullivan also contends (without elaboration) that evidence of the racial composition of certain zip codes is "irrelevant." However, J. Sullivan allegedly targeted elderly African-American and female homeowners and, therefore, efforts he made to identify victims is evidence of the scheme with which he has been charged.

  Accordingly, the motion is denied without prejudice to being raised again at trial if appropriate.

  **22. Motion to Bar Evidence of Loans from Charles Lucas [131-1]**

  The government does not intend to introduce evidence of a loan Charles Lucas allegedly gave J. Sullivan. Accordingly, J. Sullivan's motion to bar evidence of the loan is granted.

  **23. Motion to Bar Evidence of a Link Between J. Sullivan and Organized Crime [132-1]**

  J. Sullivan seeks to bar evidence of any link between the defendants and organized crime. He contends that such evidence would be irrelevant. However, the government expects former

employee Martin Kelliher to testify that the defendants directed him to tell victims that the defendants were connected to organized crime in order to convince the victims not to complain about shoddy home repairs. Such evidence would be relevant to the defendants' scheme to defraud homeowners.

Alternatively, J. Sullivan argues (without elaboration) that because the defendants were not actually connected to organized crime, any relevance would be substantially outweighed by undue prejudice. J. Sullivan forfeited this argument by failing to develop it or to include any citations to authority. *See White Eagle Cooperative Ass'n v. Conner*, 553 F.3d 467, 476 n. 6 (7th Cir. 2009) (undeveloped arguments unsupported by citations to authority are forfeited). In any event, defense counsel is free to elicit testimony from Kelliher that, in fact, the defendants were not connected to organized crime.

Accordingly, the motion in limine is denied.

### 24. Motion to Bar Evidence of Other Bad Acts [133-1]

In this motion, J. Sullivan seeks to bar evidence of other uncharged crimes, wrongs, or acts because the government failed to give advance notice of its intent to use such evidence as required under Federal Rule of Evidence 404(b). Under Rule 404(b), evidence of prior bad acts is inadmissible to "prove the character of a person in order to show action in conformity therewith." However, evidence of prior bad acts may be admitted to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* In a criminal case, the prosecution must give the defendant reasonable notice in advance of trial of its intent to use evidence of other bad acts *if* the defendant requests notice. *See* Fed. R. Evid. 404(b) ('upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause, fo the general nature of any such evidence it intends to introduce at trial.").

J. Sullivan does not contend that he requested advance notice of the government's intent to use evidence of other bad acts. Accordingly, he has not identified any requirement that the government provide notice.

Accordingly, his motion to bar evidence of other bad acts based upon lack of advance notice is denied without prejudice.

### 25. Motion for Medical Records of Co-Defendant Patrick Rooney [134-1]

J. Sullivan asks the court for an order compelling co-defendant Patrick Rooney to authorize the release of his mental health records under the Confrontation Clause of the Sixth Amendment. According to J. Sullivan, "Rooney was abusing substances during the time period covered by the crimes charged." J. Sullivan states that he may want to establish at trial that Rooney's conduct was not undertaken as part of the charged conspiracy, but was actually fueled soley by Rooney's alleged drug addiction.

As discussed above in response to the motion to compel Martin Kelliher to authorize the release of his mental records, "the right to confrontation is a *trial* right" that is "satisfied if defense counsel receives wide latitude at trial to question witnesses." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). Thus, the Confrontation Clause does not entitle the defendant to the pretrial disclosure of a witness' medical records. *United States v. LaVallee*, 439 F.3d 670, 692 (10th Cir. 2006).

Accordingly, the motion is denied.

### 26. Motion to Bar Government's Use of Expert Witnesses [136-1]

J. Sullivan seeks an order barring the government from presenting expert witnesses. The government responds that it does not intend to call expert witnesses at trial. Accordingly, the motion is granted.

### DEFENDANT DANIEL SULLIVAN'S CONSOLIDATED MOTION [138-1]

### 1. Motion to Bar Hearsay Statements

Defendant Dan Sullivan seeks to bar statements by a former employee, Martin Kelliher, including (a) statements made on MySpace, (b) statements to attorney Michelle Weinberg, (c) statements to loan officer Angelo Petropoulos, (d) statements made to an unidentified Chicago police detective, and (e) statements made to unidentified homeowners. In addition, he seeks to bar statements made by unidentified mortgage brokers, loan officers, the defendant's ex-wife, and any prior consistent statements made by unidentified witnesses for the government.

D. Sullivan's motion does not identify the specific statements he seeks to exclude and, in many instances, does not even identify the speaker. As a result, the court is left with no ability to determine whether the statements are hearsay and, if so, whether they fall under an exception that would allow their admission into evidence.

D. Sullivan also seeks to bar statements such as "cash as king" and "refinancing is how [we get] rich" because such statements were not in furtherance of the alleged conspiracy. Again, however, D. Sullivan has not identified the speaker or provided any context for the statements and, therefore, the court cannot opine on their admissibility.

Accordingly, the motion to exclude is denied without prejudice to raising the issue again at trial if warranted.

### 2. Motion to Bar Evidence that Some Chicago Neighborhoods are Predominantly African-American

This motion is essentially the same as J. Sullivan's motion to exclude evidence of the racial makeup of certain zip codes in Chicago. *See* Docket #130. For the same reasons that J. Sullivan's motion was denied, this motion is also denied. *See supra* at 9.

### 3. Motion to Bar Government from Presenting Expert Testimony at Trial

The government states that it does not intend to present expert testimony at trial. Accodingly, the motion is granted.

### 4. Motion to Bar Evidence of Victims' Finances

Next, D. Sullivan seeks to bar as irrelevant evidence of the finances of the alleged victims, either current or at the time of the alleged offense. The government contends that evidence of the victims' finances at the time of the offense is relevant because former employees will testify that they were directed to "rifle through victim-homeowners' personal effects (including mortgage and bank records) in order to determine how much the defendants could bilk from them." Response [147-1] at 5. Therefore, evidence of the victims' finances during the time of the offense is relevant to the scheme in which the defendants allegedly participated.

As for evidence of the victims' current financial situation, the government contends that such evidence is relevant to show how the victims were defrauded. However, the fraud necessarily occurred at the time of the offense. The government has offered no other explanation of how evidence of the victims' current finances is relevant.

Accordingly, the motion to bar evidence of the victims' finances at the time of the offense is denied without prejudice, while the motion to bar evidence of the victims' current finances is granted.

### 5. Motion to Bar "Golden Rule" Argument to Jury

D. Sullivan seeks to bar the government from making improper arguments to the jury, including a "Golden Rule" appeal, in which jurors are asked to put themselves in the position of one of the parties or victims, and vouching, in which the prosecutor tells jurors that he believes a witness. The government responds that it does not intend to make such improper arguments.

Accordingly, the motion is granted.

### 6. Motion to Bar Lay Opinions of Value of Home Repair Work

Finally, D. Sullivan moves to bar lay opinions of the value of the home repair work performed. The government responds that it does not intend to elicit opinion about the value of the work, but does intend to ask the alleged victims about (1) the defendants' representations of the work they would perform, (2) victims' dissatisfaction with the work performed, and (3) victims' complaints to the defendants about the work performed. The proposed testimony would be rationally based on the perceptions of the alleged victims, would be helpful to jurors, and is not based on scientific, technical, or specialized knowledge. *See* Fed. R. Evid. 701.

Accordingly, the motion to bar lay opinions is denied.

**GOVERNMENT'S CONSOLIDATED MOTION IN LIMINE [100-1]**
**GOVERNMENT'S MOTION TO ADMIT TAX RETURNS [126-1]**

### 1. Motion to Disclose and Admit Defendants' Tax Returns

The government has filed an application under 26 U.S.C. § 6103(i)(4)(A)(i) to disclose during trial the tax returns of John Sullivan and Dan Sullivan for the years 2001-06. Under § 6103, the court may allow disclosure of tax records upon finding that the records are "probative of a matter in issue relevant in establishing the commission of a crime or the guilt or liability of a party." 26 U.S.C. § 6103(i)(4)(A)(I).

Although the government's application fails to explain how the tax records are probative of the defendants' alleged scheme, the explanation is offered in a separately filed motion to admit the defendants' tax records [126-1]. According to the government, the tax records are probative because D. Sullivan's tax returns show that he underreported his income from the home repair company, while J. Sullivan failed to file returns after he was prohibited in 2002 from engaging in home repairs.

The Seventh Circuit has held that evidence that a defendant failed to file tax returns is admissible to establish that he lacked a legitimate source of income, or that his reason for not filing is his participation in illegal activities. *See United States v. Briscoe*, 896 F.2d 1476, 1500 (7th Cir. 1990).

Accordingly, the court grants the government's motion to disclose J. Sullivan's tax returns 2001-06 as probative of the fact that he reported income from the home repair business before he was prohibited from engaging in such work, but reported no income from the business after 2002. For the same reason, the court grants the government's motion to admit the tax returns under Federal Rule of Evidence 404(b) because they are probative of an issue other than his propensity to commit crimes.

However, the government does not contend that D. Sullivan was similarly prohibited from engaging in home repairs. It has therefore failed to establish that his returns are probative of an effort to conceal illegal activities. Accordingly, the motion to disclose and admit D. Sullivan's returns is denied.

The court notes that in his response brief, D. Sullivan asks the court to prohibit the government from introducing any evidence of prior bad acts under Federal Rule of Evidence 404(b) because the government has not provided the required notice. However, as noted above in the court's ruling on J. Sullivan's motion to bar evidence of other bad acts, notice is required only if requested. *See supra* at 10. D. Sullivan has not identified whether he requested notice. Because he has not established that he requested notice, his motion to bar Rule 404(b) evidence is denied without prejudice.

### 2. Motion to Admit Handwritten Journal

Next, the government seeks an order from the court admitting into evidence a journal allegedly written by John Sullivan that contains notes about the alleged victims of his purported scam. The government then proffers evidence of the journal's authenticity, such as the circumstances surrounding the discovery of the journal in a home where Sullivan used to reside.

The government's motion is denied without prejudice as premature. The court will decide at trial after hearing testimony from the appropriate witnesses whether foundation and authenticity have been established and whether the journal is admissible.

### 3. Motion to Bar Evidence of Victims' Negligence or Lack of Reasonable Reliance

In this motion, the government seeks to bar evidence that the victims of the defendants' alleged home repair scheme "exhibited negligence or a lack of due diligence in their business dealings with the defendants." Motion [100-1] at 12. The government contends that defendants to criminal fraud charges are not entitled to present evidence in order to blame their victims. *See United States v. Serfling*, 504 F.3d 672 (7th Cir. 2007) (upholding exclusion of expert testimony that a reasonable investigation would have alerted a bank that the defendant was attempting to procure a loan through fraudulent means).

The government's motion is too broad because it could limit victims' ability to explain their negotiations with the defendants, which would be relevant to the scope of work the defendants agreed to perform. Accordingly, the court denies the motion without prejudice to the government raising the issue again at trial if appropriate.

### 4.     Motion to Bar Evidence of Victims' Failure to File Civil Suits

The government seeks to bar evidence that some victims failed to file civil lawsuits. The defendants object, arguing that such evidence is relevant because it would show that, at the time, customers were satisfied with the defendants' work, and victims' claims to the contrary now are not credible. This is precisely the type of use of such evidence that is foreclosed by *United States v. Biesiadecki*, 933 F.2d 539, 544 (7th Cir. 1991).

The court notes that in addition to articulating his objection to the government's motion, Dan Sullivan used the occasion of filing his response brief to, for the first time, ask for an order allowing him to argue or submit evidence at trial that the defendants are liable only for civil, not criminal, fraud. He cites two cases, but neither allows a defendant to argue that he should be held liable for fraud only civilly, not criminally. In *United States v. Goodman*, 984 F.2d 235, 240 n.8 (8th Cir. 1993), the court merely noted that standards for civil and criminal fraud differ. Meanwhile, *United States v. Crowder*, 543 F.2d 312, 326 (D.C. Cir. 1976), addresses the crime of murder, not fraud, and whether an instruction of self-defense should have been given. (The court also notes that D. Sullivan cited to the dissenting opinion in *Crowder* without alerting this court to that fact).

The elements of civil fraud have no bearing on any issue in this case. For that reason, and because of D. Sullivan's lack of any pertinent authority, his motion to argue that he should be liable only for civil fraud is denied.

### 5.     Motion to Exclude Evidence of Defendants' Lawful Behavior

Next, the government seeks to bar evidence of the defendants' lawful behavior. However, the government does not identify the precise lawful behavior it seeks to exclude. As a result, the court cannot assess whether the lawful behavior would be inadmissible as propensity evidence, or whether it might be admissible as something other than propensity evidence.

Accordingly, the court denies the motion without prejudice to the government raising the issue again at trial if appropriate.

### 6.     Motion to Limit Cross-Examination of Witnesses on Other Bad Acts

The government seeks to bar evidence of witnesses' other bad acts. The defendants respond that they intend to abide by the limitations on introducing evidence of prior bad acts set out in Federal rules of Evidence 608 and 609, but cannot address the admissibility of specific prior bad acts under those rules because, at the time they filed their response brief, the government had not completed its disclosures of witnesses' criminal histories.

Accordingly, the court denies the motion without prejudice to the government raising the issue again at trial if appropriate. However, consistent with its ruling on J. Sullivan's motion in limine #123 regarding evidence of prior drug use, any party seeking to introduce evidence that a

Page 15

witness' prior drug use impaired his memory on specific occasions must first make an offer of proof outside the presence of the jury. *See supra* at 7.

  **7.**  **Motion to Exclude Argument or Evidence of Alibi**
  **8.**  **Motion to Exclude Comments Regarding Discovery in Jurors' Presence**
  **9.**  **Motion to Exclude Evidence of Potential Penalties**
  **10.**  **Motion to Exclude Evidence Designed to Elicit Jury Nullification**

These motions are unopposed and granted.

## CONCLUSION

For the reasons stated, the motions in limine are resolved as follows: motions [101-1], [102-1], [103-1], [105-1], [110-1], [118-1], [121-1], [122-1], [128-1], [131-1], and [136-1] are granted; [104-1], [107-1], [108-1], [109-1], [112-1], [119-1], [120-1], [123-1], [127-1], [129-1], [130-1], [132-1], and [134-1] are denied; [106-1] and [133-1] are denied without prejudice, and [100-1], [126-1] and [138-1] are granted in part and denied in part.

ENTER:

DATE: October 11, 2011

              *Blanche M. Manning*
              Blanche M. Manning
              United States District Judge